IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICHOLE SCOGGINS,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO.: 4:19-cv-2709 |
| | §<br>§<br>§ | |
| CHI ST. LUKE'S HEALTH -<br>BRAZOSPORT<br>*Defendant*. | §<br>§<br>§ | JURY DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

**NOW COMES,** Plaintiff Nichole Scoggins and files this Plaintiff's Original Complaint and Jury Demand complaining of and about Defendant CHI St. Luke's Health – Brazosport, respectfully showing to the Court as follows:

### I.     PARTIES

1.     Plaintiff Nichole Scoggins is an individual citizen residing in the State of Texas.

2.     Defendant CHI St. Luke's Health – Brazosport, is a domestic limited liability company conducting business in the State of Texas.

3.     Defendant may be served with process through its registered agent, C T Corporation System as reflected in the Texas Secretary of State records, at 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136 USA.  Plaintiff has requested a waiver of summons from Defendant at this time.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's causes of action arises under a federal statute, 42 U.S.C. § 12101 *et seq.*, the Americans with Disabilities Act of 1990, as amended, ("ADAAA"), and 29 U.S.C. § 2601, *et seq.*, the Family and Medical Leave Act.

5. Moreover, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this federal district.

## III. NATURE OF THE ACTION

6. This is an action against Defendant for violations of the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. §§ 12101, *et seq*. Specifically, Plaintiff complains that Defendant discriminated against her on the basis of her disability and subsequently retaliated against her after engaging in a protected activity by terminating her employment in violation of the ADAAA. Additionally, Plaintiff complains that Defendant interfered with her FMLA rights in violation of 29 U.S.C. § 2601, *et seq.*

## IV. PROCEDURAL REQUIREMENTS

7. On December 18, 2017, Plaintiff filed a charge of disability discrimination, harrasmsent and hostile work environment, and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 460-2018-02072). Thereafter, on April 24, 2019, the EEOC issued Plaintiff her Notice of Right Sue upon request. Plaintiff files this lawsuit within ninety (90) days of receiving her Notice of Right to Sue.

## V.     FACTS

8. In June of 2002, Ms. Scoggins started working for CHI as a radiologic technologist, wherein she made about $14.00 per hour.  Thereafter, in 2010, Ms. Scoggins became the Director of Imagining Services, wherein she made about $39.40 per hour.  As such, based on a forty (40) hour work week, Ms. Scoggins was making about $81,952.00 per year.

9. Around December 2, 2016, Ms. Scoggins met with Lori Green (who was the Human Resources Business Partner) to tell her that she was going to be having surgery soon; and, that she would need to be out on medical leave per the Family Medical Leave Act (hereinafter referred to as "FMLA" leave).  In that same conversation, Ms. Scoggins told Ms. Green that she felt very uncomfortable about telling her immediate supervisor, Shannon Haltom (who was the Vice President of Acute Care Services), the reason why she was going to be out on FMLA leave.  As such, Ms. Green told Ms. Scoggins that it was her right to not tell Ms. Haltom why she was going to be out on FMLA.

10. On January 31, 2017, Ms. Scoggins informed Ms. Haltom that she would be having surgery on either February 13, 2017 or February 14, 2017. In response, Ms. Haltom consistently tried pressuring Ms. Scoggins to tell her what type of surgery she was going to have and why she was going to be out on FMLA leave.  Ms. Haltom questioned Ms. Scoggins about it at least three (3) times in that same meeting.  However, Ms. Scoggins told Ms. Haltom that she did not want to discuss it.  Importantly, due to Ms. Haltom's persistence in trying to find out why Ms. Scoggins was going out on FMLA leave, Ms. Scoggins eventually told Ms. Haltom that since she did not have to legally tell Ms. Haltom why she was going to be out on medical leave, Ms. Scoggins was not going to tell her (because Ms. Scoggins did not feel comfortable telling her).  Ms. Scoggins

felt extremely guilty and intimated by Ms. Haltom regarding Ms. Haltom interfering with her FMLA leave. Ever since Ms. Scoggins' meeting with Ms. Haltom, Ms. Haltom's discriminatory, retaliatory, and harassing conduct towards her created a hostile work environment. Consequently, on February 8, 2017, Ms. Scoggins went to talk to Ms. Green about the meeting that she had with Ms. Haltom about her FMLA leave. In that meeting, Ms. Scoggins specifically told Ms. Green two (2) different times that she felt that she was working in a hostile environment, which was created by Ms. Haltom.

    11. On February 10, 2017, Ms. Scoggins provided CHI the FMLA documents that were filled out by her surgeon. Since Ms. Scoggins was too scared to ask Ms. Haltom to sign the FMLA documents, especially since Ms. Scoggins did not want Ms. Haltom to know about the details of her FMLA leave, Ms. Scoggins spoke to Ms. Green about it. Ms. Green stated that she would talk to her Houston human resources representative about it and let them know about the situation so that they could sign it or to authorize Ms. Green to sign it. In that same meeting, Ms. Green told Ms. Scoggins to e-mail Houston's human resources department (via Kelli Johnson, who was a representative in Houston's human resources department) about Ms. Haltom's behavior and conduct towards Ms. Scoggins. However, Ms. Green begged Ms. Scoggins to not tell Ms. Johnson, Ms. Haltom, or anyone else that Ms. Scoggins had discussed the situation with anyone else aside from Ms. Johnson. Therefore, since Ms. Scoggins felt extremely pressured by Ms. Green, especially since it appeared that Ms. Green was maybe trying to help Ms. Scoggins, Ms. Scoggins told Ms. Green that she would not say anything to anyone about their previous communications regarding Ms. Haltom.

12. From February 14, 2017 through February 16, 2017, Ms. Scoggins was in the hospital for her surgery and observation post-surgery. As part of Ms. Scoggins' disability, she was unable to stand or sit for a long period of time, she had issues eating, she had issues sleeping, etc.. Thus, Ms. Scoggins had a long recovery process from the surgery. Ms. Scoggins was out on FMLA leave from February 14, 2017 through March 30, 2017. However, Ms. Scoggins still had to perform some work duties while out on FMLA leave, including payroll (so that CHI employees could get paid).

13. On February 23, 2017, Ms. Scoggins sent an e-mail to Ms. Johnson to discuss Ms. Haltom's discriminatory and harassing conduct towards Ms. Scoggins, which had caused a hostile work environment. In Ms. Scoggins' e-mail, she specifically told Ms. Johnson the following about Ms. Haltom: "…Could it be that some of her animosity/hatred toward me is in retaliation for me not telling her my personal business about surgery? Her attitude toward me is always condescending and rather patronizing. I feel threatened and very intimidated each time I talk to her…I leave feeling attacked and berated/belittled after each meeting with her. I am in fear of losing my job on a daily basis, and especially while I am out on FMLA.".

14. Thereafter, on March 7, 2017, Ms. Johnson asked Ms. Scoggins if she had reported Ms. Haltom to either her local human resources department and or to Ms. Haltom's direct supervisor. Since Ms. Scoggins did not know how to respond to Ms. Johnson, Ms. Scoggins asked Ms. Green about it. Ms. Green's suggestion was for Ms. Scoggins to make it clear to Ms. Johnson that Ms. Green was not the one that told Ms. Scoggins to reach out to Houston's human resources department. When Ms. Scoggins and Ms. Johnson finally spoke on the telephone on March 16, 2017, Ms. Scoggins told Ms. Johnson what Ms. Green told her to say to Ms. Johnson – i.e., that

Ms. Scoggins was under the impression from past concerns that the type of complaints that Ms. Scoggins was making were complaints that were supposed to be told to the human resources department in Houston. Due to Ms. Scoggins' fear of Ms. Haltom, including the fear of being retaliated against, they discussed Ms. Johnson vaguely looking into it so that Ms. Scoggins would not be outed for making complaints about Ms. Haltom.

15. On March 22, 2017, Ms. Scoggins called Ms. Green to talk about possibly getting released to go back to work on March 31, 2017. When Ms. Green told Ms. Scoggins to also e-mail Ms. Haltom about it, Ms. Scoggins told Ms. Green about the hostile work environment that Ms. Haltom had created for her. Nonetheless, Ms. Scoggins e-mailed Ms. Haltom to let her know about Ms. Scoggins' possible March 31, 2017 release date. Ms. Haltom's response was that she did not feel that it was necessary for Ms. Scoggins to return back to work on March 31, 2017. But, since Ms. Scoggins got released to return to work on March 31, 2017, she went back on that date after being out on FMLA leave. When Ms. Scoggins returned to work, she e-mailed Ms. Haltom to let her know that she was back at work.

16. After Ms. Scoggins got back from FMLA leave, Ms. Haltom's conduct towards Ms. Scoggins got much worse. Aside from Ms. Haltom wanting Ms. Scoggins' employees to break laws and do things that were completely unethical, which Ms. Scoggins and her employees obviously took issue with, Ms. Haltom continued to retaliate and discriminate against Ms. Scoggins regarding her FMLA and disability. On June 6, 2017, Ms. Scoggins, again, went to go complain to Ms. Green about Ms. Haltom's discriminatory, retaliatory, and harassing behavior towards Ms. Scoggins; and, specifically mentioned the hostile work environment.

17. On June 23, 2017, Ms. Scoggins went out on vacation. When she returned from vacation on July 10, 2017, Ms. Scoggins was called into a meeting. When she showed up for the meeting, Ms. Haltom and Ms. Green were present. At that meeting, Ms. Scoggins was terminated.

## VI.   COUNTS 1 AND 2: DISABILITY DISCRIMINATION AND FAILURE TO ACCOMODATE UNDER THE ADA

18. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

19. Plaintiff is a qualified individual within the meaning of the ADAAA (42 U.S.C. § 12111(8)).

20. Defendant is an employer and cover entity under the ADAAA (42 U.S.C. §§ 12111(2), (5)(A)).

21. Plaintiff was an employee of Defendant under the ADAAA (42 U.S.C. § 12111(4)).

22. Plaintiff suffers from a disability—a physical impairing condition that substantially limits a major life activity, including, sitting, walking, and working—within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(A), 2(A)&(B)).

23. Defendant regarded or perceived Plaintiff as having a disability within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(C), (3)(A)).

24. Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADAAA (42 U.S.C. § 12112).

25. Defendant also discriminated against Plaintiff by being "regarded as" having a disability.

## VII.   COUNT 3: RETALIATION UNDER THE ADAAA

26. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

27. Defendant retaliated against Plaintiff by terminating her employment on July 10, 2017, after she complained of disability discrimination, retaliation and harrassment during her employment with Defendant in violation of 42 U.S.C. § 12203.

28. As a direct and proximate result of Defendant's intentional retaliatory actions, Plaintiff has suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses.

29. As a result of Defendant's intentional retaliatory actions, Plaintiff has suffered and is likely to continue to suffer pecuniary loss, among other things, in the form of lost income in an amount to be determined at trial.

30. Plaintiff has incurred and will continue to incur attorney's fees, litigation expenses, and costs in pursuing her claims for retaliation under the ADAAA.

## VIII.   COUNT 4: FMLA INTERFERENCE

31. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

32. Plaintiff was entitled to take medical leave for her documented serious health condition and was entitled to return to the same position or equivalent position with equivalent pay, benefits, and working conditions at the conclusion of the leave.

33. Defendant interfered with and denied Plaintiff's exercise of his FMLA rights and/or retaliated against her for exercising her rights when Plaintiff was terminated from her employment in violation of 29 U.S.C. § 2601 *et seq.*

34.     Plaintiff has suffered irreparable injury and monetary damage as the result of Defendant's acts for which Plaintiff now seeks redress.

## IX.   JURY DEMAND

35.     Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff has submitted the jury demand and herein submits the jury fee.

## X.   PRAYER

36.     **WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a.  All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to lost wages, back and future pay, reinstatement, upgrading, and compensation for benefits not received;

b.  Past physical pain and mental suffering;

c.  Present physical pain and mental suffering;

d.  Future physical pain and mental suffering

e.  Compensatory damages;

f.  Punitive damages in an amount above the minimum jurisdictional limits of the Court;

g.  Reasonable attorneys' fees as allowed by law, with conditional awards in the event of appeal;

h.  Pre-judgment interest at the highest rate permitted by law;

i.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

j.  Costs of Court; and

k.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

Respectfully Submitted,

kennard law P.C.

Alfonso Kennard, Jr.
Texas Bar No. 24036888
S.D. ID 713316
2603 Augusta Dr., Suite 1450
Houston, Texas 77057
T: (713) 742-0900
F: (713) 742-0951
alfonso.kennard@kennardlaw.com

**ATTORNEY-IN-CHARGE
FOR PLAINTIFF**